ent view was entertained than is therein expressed, although the affirmance in this court went upon another ground, I feel at liberty to express my own views in the matter.

If plaintiffs could not defend an action brought by defendant against them to recover the prices agreed upon in the several contracts, they cannot now sue, either in law or in equity, to compel repayment thereof. Of course, if the contracts were unexecuted, the plaintiffs might refuse to carry them out, and would not be liable in damages for so doing. Smith v. Serby, L. R. 3 Q. B. Div. 552. Or if it appeared that, by reason of the corrupt bargain between defendant and plaintiffs' purchasing agents, unnecessary goods and materials and unnecessary repairs had been ordered, or a price beyond the reasonable value thereof had been exacted, plaintiffs might have relief to the extent of their damages by reason of the excessive price charged or the unnecessary goods and materials ordered. And they might avail themselves of this relief, either by way of defense to an action for the price agreed upon, or, if the contract price had been paid, in an action to recover the excess paid as the result of the fraud.

But the complaint fails to allege the ordering of unnecessary repairs or materials, or the payment of a price in excess of the reasonable value thereof. Under such circumstances, I think the plaintiffs are entitled to no relief, and for that reason I vote to affirm the order sustaining the demurrer.

---

### WILKINS v. PRICE.

(Supreme Court, Appellate Term, First District. June 17, 1913.)

1. INSURANCE (§ 790*)—MUTUAL BENEFIT—CONTRACT—CUSTODIAN.

Provisions of by-laws, that on the death of a member "$50 shall be paid to his widow or the nearest relative," "an assessment of $1 shall be levied on each member to reimburse the treasury," and "no donation for charity shall exceed $5," entitled the widow of a deceased member to $50 as of right, and did not provide for a discretionary charity.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1960; Dec. Dig. § 790.*]

2. INSURANCE (§ 797½*)—MUTUAL BENEFIT—PERSON ENTITLED TO BENEFITS—ASSIGNMENT.

An assignment by a beneficiary of funeral benefits to an undertaker in part payment of his bill for interment of the deceased was valid.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1979; Dec. Dig. § 797½.*]

Appeal from Municipal Court, Borough of Manhattan, Seventh District.

Action by Annie Wilkins against Frank Price, as treasurer of Hiram Lodge No. 4, F. & A. M. Judgment for defendant. Plaintiff appeals. Affirmed.

The following is the opinion of Sturges, J., in the Municipal Court:

Plaintiff, as the widow of Clinton E. Wilkins, who was a member in good standing of Hiram Lodge No. 4, F. & A. M., of the city of New York, of

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

which the defendant, Frank Price, was treasurer, has brought this action to recover the sum of $50 upon the following by-law of the lodge:—

### "Article V. Funeral Benefits.

"Sec. 1. On the death of a member of this lodge they shall be entitled to this benefit: Fifty dollars shall be paid to his widow or the nearest relative of the deceased member. Should the member have no near relative, it shall be the duty of the lodge to receive the benefit and attend the decent interment of the deceased member and render a report to the lodge.

"Sec. 2. At the death of a financial member of this lodge an assessment of one dollar will be levied upon each member to reimburse the treasury.

"Sec. 3. Any member of this lodge who is in arrears one year for dues and assessments shall not be entitled to this benefit."

Defendant resists payment, claiming that the by-law in question does not impose any liability on the lodge, but that the amount therein designated is a mere gratuity or charity, which may be withheld. The answer further alleges that prior to the commencement of the action the plaintiff assigned to one James C. Thomas all her interest in and to any claim against the lodge. It is contended on behalf of the plaintiff that the benefit provided by the bylaw is personal, and was not assignable, and also that the alleged assignment was not executed by the plaintiff or with her authority, and is consequently void.

[1] I am of opinion that defendant's claim that the effect of the by-law was simply to provide for a gratuity or charity cannot be sustained. It is difficult to see how the lodge could have set forth more clearly their liability than by a statement that the member should be entitled to the benefit, and that $50 should be paid to his widow or nearest relative. So far as the appropriation of the moneys of the lodge for charity is concerned, provision is made by section 6 of article 4 of the by-laws, as follows: "No donation for charity from the funds of the lodge shall exceed five dollars unless by a two-thirds vote of the lodge."

The whole scheme of article 5, providing for funeral benefits, indicates the intention to appropriate the sum of $50, not as a matter of charity, but as a matter of right. The by-laws constitute a contract between the members and the lodge, and when they provide that in a certain event—that is, upon the death of a member—a certain designated amount shall be paid to a designated person, an obligation thereby is created against the lodge in favor of such person and for the amount named. Hiram Lodge is a benevolent order, recognized as such by the statutes of the state (Laws of 1909, c. 11, being chapter 3 of the Consolidated Laws), section 2, subd. 1, which provides for its organization.

In Placa v. Polizzi Generosa Society of N. Y. (Sup.) 138 N. Y. Supp. 822 the by-laws provided: "On the death of the wife of a regular member of the society, the family will receive fifty cents for every member who is found in good standing, which sum will be drawn from the mortuary assessment fund and at the next meeting contributed by the members." The court held that a liability existed thereunder in favor of a regular member of the society, and that the provision that the money for the benefit "will be drawn from the mortuary assessment fund" was a method of providing the means of payment, and not a condition of liability. As stated before, the obligation to pay the widow or nearest relative was absolute, and although it may well be that the purpose of the provision was to assist such person to procure a decent interment of the deceased member, its use by such person was not restricted to such purpose or subject to the supervision of the lodge, as in Talbot v. Tipperary Men Nat. Social & Ben. Ass'n, 23 Misc. Rep. 486, 52 N. Y. Supp. 633, Hughes v. Journeymen Horseshoers' Protective Union, etc., 29 Misc. Rep. 327, 60 N. Y. Supp. 526, and Fanton v. Coachmen's Union, 13 Misc. Rep. 245, 34 N. Y. Supp. 162.

The by-law in question provides for a funeral benefit, not for a death benefit, which might be considered in the nature of an insurance. It is designated as a funeral benefit, and the provision of section 1 that in the event that the member has no near relative it shall be the duty of the lodge to

receive the benefit and attend the decent interment of the deceased member indicates beyond question the purpose of the benefit, namely, that such member, when deceased, shall receive decent interment, and that it is to carry into effect such purpose that the payment is directed to be made to the widow or nearest relative, who would have a direct personal interest in accomplishing this purpose. If the money is paid to the widow or nearest relative with this object in view, and such person fails to devote it to such purpose, the lodge has nevertheless performed its duty towards its deceased member, and has fulfilled its obligation to him. The action taken by the lodge in adopting the resolution directing the payment of the amount to the widow, with full knowledge of the existence of her assignment, while not conclusive as to the right of the plaintiff to the money, is persuasive evidence of the character of the benefit as it was considered by the lodge, and as to the party entitled thereto, and that the lodge would not recognize an assignee of the benefit as being entitled to the money. The lodge, however, could not by such a resolution dispose of a claim against itself, nor deprive a party having a proper claim of his right to enforce it; in other words, the lodge cannot be the judge of its own case. See Placa v. Polizzi Society, supra.

It is contended that the benefit is personal to the plaintiff, and not assignable, and the case of McCord v. McCord, 40 App. Div. 275, 57 N. Y. Supp. 1049, is cited as an authority sustaining this contention. In that case the statute (Laws of 1882, c. 36) authorized the Produce Exchange "to make provision for the widows and families of deceased members" and the by-laws adopted by the Exchange pursuant to this act provided a method of raising moneys for that purpose, and it was also therein provided: "That nothing herein contained shall be construed as constituting any estate in esse which can be mortgaged or pledged for the payment of any debts; but it shall be construed as the solemn agreement of every subscribing member of the New York Produce Exchange to make a gift to the family of each deceased member, and of the Exchange to collect and pay over to such family the said gift." The member of the Exchange and his wife executed an assignment to the plaintiff of all her right in and to the gratuity fund. The assignment was made to secure the plaintiff for advances which he had made to his son, who was the member, and for further advances to be made to him. The evidence shows that the advances were made partly for the support of the son and his wife, and partly to pay assessments upon the son as a member of the Exchange under the gratuity plan. The court held that the assignment was invalid, saying: "Our conclusion here is based upon the particular ground that it would not only be against public policy to uphold this assignment, but it would be subversive of the entire plan of beneficence as embodied in the constitution and by-laws of the Exchange."

The authority of the case is somewhat shaken, although not upon the question directly involved, by Dexter v. Supreme Council, 97 App. Div. 545, 90 N. Y. Supp. 292. It was, however, directly disapproved by the Court of Appeals in Holmes v. Seaman, 184 N. Y. 486, 77 N. E. 724, in so far as it held that the assignment was wholly void. The court in Holmes v. Seaman held that the assignment was valid in so far as it charged the interest of the beneficiary in the gratuity fund with advances made for the purpose of paying assessments imposed upon the member, and says: "We are unable to approve it [McCord v. McCord], however, so far as it denies to a beneficiary in the gratuity fund the power to charge his interest with the repayment of such amounts of money as may be paid by another to maintain that interest in existence, and without which payments it must have been absolutely destroyed."

In other words, if the assignment was made for the purpose of keeping alive the benefit which the association had provided for its member, it was thereby accomplishing the object of the association in creating the benefit, and to such extent and for this reason the assignment would be valid. In the case at bar there is no such definite limitation of the benefit as in the McCord Case, and no provision in the by-laws which may be deemed to be a prohibition against any assignment. The mere fact that it is designated as a funeral benefit is not, in my opinion, sufficient to clothe the benefit with

the character of nonassignability in order to constitute a prohibition against assignment. The assignment in this case was made to the undertaker who had charge ' of the funeral arrangements of the deceased member in part payment of his bill. Reasoning by analogy from the Holmes Case it is apparent that the purpose for which the benefit was created by the lodge was to secure the decent interment of the deceased member, the appropriation of the money by the assignment to that object in effect carried out the purpose of the lodge in creating the benefit, and therefore should be sustained upon that ground, irrespective of the power of the plaintiff to assign the claim absolute on its face and which had ripened into a vested right to which she was entitled.

After a careful consideration of all the evidence, I have reached the conclusion that the assignment in question was executed by the plaintiff, and by virtue thereof she parted with all interest in the claim in suit.

Defendant is therefore entitled to judgment.

Argued May Term, 1913, before LEHMAN, BIJUR, and WHITAKER, JJ.

Wilder, Ewen & Patterson, of New York City, for appellant.
Benjamin Bulmer, of New York City, for appellee.

PER CURIAM. Judgment affirmed, with costs.

---

(157 App. Div. 394.)

### DREW v. VILLAGE OF WHITE PLAINS.

(Supreme Court, Appellate Division, Second Department.   June 13, 1913.)

1. MUNICIPAL CORPORATIONS (§ 230*) — PUBLIC WATER SUPPLY — STATUTES — AUTHORITY TO CONTRACT.

Laws 1896, c. 769, providing for a supply of water to the village of White Plains, and creating a board of water commissioners for such village, provided by section 3 that the commissioners might acquire by condemnation or purchase any lands, water rights, etc., from either individuals or water companies, with the same right to operate such property, and the right to purchase or construct necessary works, and by section 14 that the net income should be used for increasing the capacity of such works or the supply. The board acquired a municipal plant which was inadequate, and was obliged to purchase water and contracted with the individual plaintiff for not less than 1,000,000 gallons a day, to be delivered at a fixed rate. *Held* that, since the commissioners were not appointed or removable by the municipal authorities, the Legislature intended to create a body to provide an adequate supply, and that the contract with plaintiff was not ultra vires.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 654–656; Dec. Dig. § 230.*]

2. STATUTES (§ 184*)—CONSTRUCTION—POLICY AND PURPOSE OF ACT.

In construing statutes, that sense should be adopted which harmonizes best with the context, and most fully promotes the apparent object of the Legislature.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 262; Dec. Dig. § 184.*]

3. STATUTES (§ 189*)—CONSTRUCTION—INTENTION OF LEGISLATURE.

The intent of the Legislature is the object of all construction, and inconsistencies in a statute are to be harmonized and their literal or usual meaning ignored, if thereby the intent can be arrived at.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 268; Dec. Dig. § 189.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes